# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

KIMAN KINGSLEY, et al.,         )

                             )

        Plaintiffs,           )

                             )

v.                            )        Case No. 3:17-cv-05007-SRB

                             )

LAWRENCE COUNTY, MISSOURI, et al.,  )

                             )

        Defendants.        )

## ORDER

Before the Court is Defendants DeLay, Berry, Ford and Lawrence County's Motion for Summary Judgement. (Doc. #423). For the reasons discussed below the motion is granted.

## I.    Background

The undisputed facts reveal four events that form the basis of Plaintiff Kiman Kingsley's case. The first event is a February 2013 audio-recorded conversation involving Defendant Brad DeLay, the duly elected sheriff of Lawrence County, Missouri; Defendant Chris Berry, a deputy in the Lawrence County Sheriff's Office ("LCSO"); Lisa Kingsley, sister-in-law to Plaintiff Kiman Kingsley and a former Defendant in this case; and Cynthia Kingsley, former sister-in-law to Plaintiff and also a former Defendant in this case. The second event is Plaintiff's July 2013 warrantless arrest by Defendant Jon Ford, another Lawrence County deputy. The third is Defendant Berry's investigation following Plaintiff's arrest. The fourth is Special Prosecutor Patrick Sullivan's filing of a criminal complaint against Plaintiff in September 2015. Plaintiff alleges that evidence arising from these events, taken together with other evidence and reasonable inferences, show that Defendants individually violated his constitutional rights,

conspired to violate those rights, acted pursuant to Lawrence County's official policy or custom in causing those violations, and committed tortious conduct under Missouri common law.

Plaintiff Kiman Kingsley is the sole Plaintiff left in this case. The remaining Defendants are DeLay, Berry, and Ford ("LCSO Defendants") in both their individual and official capacities, and Lawrence County itself. Five of the claims in Plaintiff's Third Amended Complaint remain. Plaintiff brings Counts I through IV under 42 U.S.C. § 1983. In Count I, Plaintiff alleges that LCSO Defendants lacked probable cause for his July 2013 warrantless arrest, which thus violated his rights under the Fourth Amendment as applied to the states through the Fourteenth Amendment. In Count II, Plaintiff alleges that LCSO Defendants conspired to violate his constitutional rights. In Count III, Plaintiff alleges that remaining Defendants intentionally or recklessly failed to investigate other leads that would have exonerated Plaintiff and "resulted in criminal charges not being filed against Plaintiff," and that this failure therefore violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment. In Count IV, Plaintiff alleges that Defendant Lawrence County is directly liable due to its policies, practices, or customs that violated his constitutional rights.

Plaintiff brings Counts V and VI under Missouri common law. In Count V, Plaintiff alleges that Defendants' conduct constitutes common law false arrest. In Count VI, Plaintiff alleges that Defendants' conduct constitutes common law malicious prosecution. Defendants bring the present motion for summary judgment, arguing that Plaintiff has failed to produce evidence to establish his claims and that various immunities protect Defendants.

## II.     Legal Standards

### A.  Summary Judgment

Federal Rule of Civil Procedure 56(a) requires a court to grant a motion for summary judgment if 1) the moving party "shows that there is no genuine dispute of material fact" and 2) the moving party is "entitled to judgment as a matter of law."  A nonmoving party survives a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, is "such that a reasonable jury could return a verdict for the nonmoving party."  *Stuart C. Irby Co. v. Tipton*, 796 F.3d 918, 922 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  While a plaintiff opposing summary judgment "may not simply point to allegations in the complaint," *Robbins v. Becker*, 794 F.3d 988, 993 (8th Cir. 2015) (internal quotation marks and citation omitted), the "standard for avoiding summary judgment" is "relatively lenient."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 479–80 (2013) (citing *Anderson*, 477 U.S. at 248).  The purpose of summary judgment "is not to cut litigants off from their right of trial by jury if they really have issues to try."  *Hughes v. Am. Jawa, Ltd.*, 529 F.2d 21, 23 (8th Cir. 1976) (internal quotation marks omitted) (quoting *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467 (1962)); *see also Melvin v. Car-Freshener Corp.*, 453 F.3d 1000, 1004 (8th Cir. 2006) (Lay, J., dissenting) (quoting *Poller*, 368 U.S. at 467).

### B.  Qualified Immunity

Under the doctrine of qualified immunity, a government officer sued in an individual capacity is "shielded from liability for civil damages" when performing discretionary functions unless the officer's conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Because qualified immunity "is an immunity from suit," the issue "should be resolved 'at the earliest possible stage in litigation' to ensure that insubstantial damage claims against government officials are resolved 'prior to discovery.'" *Johnson v. Moody*, 903 F.3d 766, 773 (2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009)).

To defeat a qualified immunity defense, a plaintiff must show that: 1) "the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right," and 2) that "the right was clearly established at the time of the deprivation." *Saylor v. Nebraska*, 812 F.3d 637, 643 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)). Regarding prong two of the qualified immunity analysis, "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Nord v. Walsh Cty.*, 757 F.3d 734, 739 (8th Cir. 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). To make this showing "it is unnecessary to have 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Vester v. Hallock*, 864 F.3d 884, 887 (8th Cir. 2017) (quoting *Parker v. Chard*, 777 F.3d 977, 980 (8th Cir. 2015)). District courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

### III. Discussion

#### A. Plaintiff's § 1983 Claims

##### i. Duplicative Official-Capacity Claims

Defendants point out that Lawrence County is a named Defendant and argue that

summary judgment is appropriate on Plaintiff's claims against Defendants DeLay, Berry, and Ford in their official capacities because those claims are duplicative. In response, Plaintiff "concedes . . . that the official capacity claims against DeLay, Berry and Ford are under applicable law duplicative as being essentially claims against the municipality, Lawrence County." (Doc. #444, p. 46). This Court agrees. *See Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)) ("An official-capacity suit is merely another way of pleading an action directly against the public entity itself."). Defendants DeLay, Berry, and Ford are therefore entitled to summary judgment on Plaintiff's § 1983 claims against them in their official capacities. For the remainder of section III.A., the Court focuses its analysis on Plaintiff's § 1983 claims against Defendants DeLay, Berry, and Ford in their individual capacities and against Defendant Lawrence County.

### ii. Wrongful Arrest under § 1983 (Count I)

Courts analyze a § 1983 claim for wrongful arrest under the Fourth Amendment. *See Johnson v. City of Minneapolis*, 901 F.3d 963, 967 (8th Cir. 2018) (addressing § 1983 claim in which plaintiff alleged "her right to be free from unreasonable seizure [under the Fourth Amendment] was violated because she was arrested . . . without a warrant or probable cause"). "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause." *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (internal quotation marks omitted) (quoting *Borgman v. Kedley,* 646 F.3d 518, 522–23 (8th Cir. 2011)). Probable cause supporting "a warrantless arrest exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* (quoting *Borgman*, 646 F.3d at 522–23). Arguable probable cause

giving rise to qualified immunity "exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Id.* (internal quotation marks omitted) (quoting *Borgman*, 646 F.3d at 523). While "the probable cause standard inherently allows room for reasonable mistakes by a reasonable person," the arguable probable cause standard "affords law enforcement officials an even wider berth for mistaken judgments 'by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). "[A]n analysis of arguable probable cause necessarily includes consideration of probable cause," even though the two standards are distinct "legal concepts." *Id.*

Defendants DeLay and Berry argue they are entitled to summary judgment on Count I because Plaintiff has not produced any evidence that Defendants DeLay or Berry participated in or knew about Plaintiff's July 2013 arrest and that thus Plaintiff fails the first prong of qualified immunity. Defendant Ford argues he is entitled to summary judgment on Count I based on qualified immunity because Ford had probable cause to arrest Plaintiff without a warrant, or at least because Ford's reasonable belief gave rise to arguable probable cause to arrest Plaintiff.[1] Plaintiff argues that Defendant Ford did not have probable cause, or even arguable probable cause, to arrest Plaintiff because "probable cause does not exist when a 'minimal further investigation' would have exonerated the suspect" and "[u]nder a relaxed standard of arguable probable cause, a cursory investigation by the officers would have cast further doubt about many of the 'facts' raising [Defendant Ford's] suspicion." (Doc. #444, pp. 48–51).

---

[1] Defendants also argue that the doctrine of collateral estoppel (also called "issue preclusion") bars Plaintiff from arguing in this federal court proceeding that there was no probable cause for his arrest because at the preliminary hearing in the underlying state criminal proceeding Plaintiff, through counsel, conceded there was probable cause to arrest him. (Doc. #424, p. 29). Here, the preliminary hearing has no preclusive effect on the issue of whether there was probable cause to arrest Plaintiff. For one thing, the special prosecutor dismissed the charge against Plaintiff, and therefore the state court never rendered a final judgment on the merits to which the probable cause concession was necessary.

Here, Defendants DeLay, Berry, and Ford are entitled to summary judgment on Count I due to qualified immunity. As to Defendants DeLay and Berry, Plaintiff fails the first qualified immunity prong because he has not established a genuine dispute of material fact as to whether DeLay and Berry were personally involved in the challenged conduct: Plaintiff's arrest. Plaintiff has produced no evidence of their involvement, let alone any evidence to genuinely dispute Defendants' supported statements of fact that "[n]either DeLay nor Berry were present when Ford arrested Kiman" and that "[n]either DeLay nor Berry were aware or had any information that Ford was interacting with [Plaintiff] on July 5, 2013, and they did not suggest, encourage, instruct, direct or imply that Ford should arrest [Plaintiff]." (Doc. #444, p. 15; Doc. #424-1, p. 4; Doc. #424-9, p. 3). Because a § 1983 plaintiff must show "each individual defendant's personal involvement in the alleged violation," Defendants DeLay and Berry are entitled to judgment as a matter of law on Count I. *See White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) (citing *Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009). Accordingly, summary judgment is granted as to Defendants DeLay and Berry on Count I.

Defendant Ford is also entitled to qualified immunity on Count I because he had at least arguable probable cause to arrest Plaintiff. At the time of Plaintiff's arrest, Missouri law provided that "[a] person commits the crime of assault in the second degree if he . . . [a]ttempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument." Mo. Rev. Stat. § 565.060.1(2) (2013). Missouri law also provided that "[a] person commits the crime of unlawful use of weapons if he or she knowingly . . . [e]xhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner." Mo. Rev. Stat. § 571.030.1(4) (2013). The evidence, viewed in the light most favorable to Plaintiff, shows that a reasonable officer in Defendant Ford's position could

have determined that there was probable cause to arrest Plaintiff for second degree assault or unlawful use of weapons. *See Borgman*, 646 F.3d at 522–524.

The following facts, none of which Plaintiff genuinely disputes,[2] show at least arguable probable cause to arrest Plaintiff. On July 5, 2013, Defendant Ford received a call from his dispatcher directing him to respond to a call by Cynthia Kingsley ("Cynthia"), who had reported to police that Plaintiff assaulted her (Doc. #444, p. 11; Doc. #424-10, p. 2). Defendant Ford met Cynthia about her allegations and obtained both oral and written statements from her (Doc. #444, p. 11; Doc. #424-10, p. 2). Through her statements, Cynthia reported to Defendant Ford that earlier that day she and Plaintiff had an argument, that Plaintiff "attempted to stab her with a yellow pocket knife," and that she "then used a Taser on [Plaintiff] and locked herself in her vehicle before attempting to drive away." (Doc. #444, p. 11; Doc. #424-10, p. 2). Cynthia reported to Defendant Ford that Plaintiff tried to stab her tires with the pocket knife as she tried to drive away (Doc. #444, p. 12; Doc. #424-10, pp. 2–3). Cynthia reported to Defendant Ford

---

[2] These facts are not genuinely disputed because Plaintiff either expressly admits them or does not comply with Rule 56(c) or this Court's Local Rules in attempting to deny them. At the summary judgment stage, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion" in one of two ways: either by "citing to particular parts of materials in the record" such as depositions, documents, or affidavits, or by "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). This Court's Local Rules reinforce that requirement. If a party opposing summary judgment "controverts a given fact, it must properly support its denial in accordance with Fed. R. Civ. P. 56(c)." Local Rule 56.1(b)(1). "Unless specifically controverted by the opposing party, all facts set forth in the statement of the movant are deemed admitted" for summary judgment purposes. Local Rule 56.1(b)(2). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Plaintiff's attempts to deny some facts on the ground that he "is without sufficient information to either admit or deny" them, (*see, e.g.*, Doc. #444, p. 11), do not satisfy Rule 56(c) or Local Rule 56.1. *See Stewart v. Speiser*, No. 16-6117-CV-SJ-BP, 2018 WL 614968, at *1 (W.D. Mo. Jan. 29, 2018) (citing Fed. R. Civ. P. 56(c)(1)) (holding that such attempted denials are not "appropriate response[s] to a motion for summary judgment" because "the non-moving party must point to evidence in the Record that creates a factual dispute" and that "[i]n these instances, the matters are effectively admitted."). Nor do Plaintiff's attempts to deny some facts on the basis that they are "self-serving" satisfy Rule 56(c) or Local Rule 56.1. (*See, e.g.*, Doc. #444, p. 10). *See Van Deelen v. City of Kansas City*, 411 F. Supp. 2d 1105, 1120–21 (W.D. Mo. 2006) (citing *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1191 (8th Cir. 1995)) (holding that defendant movant's factual assertions need not "be disregarded pursuant to the rule that a plaintiff may not rely on his own self-serving affidavits to establish a genuine issue of material fact for trial" because that rule governs only "circumstances where the plaintiff, in response to a motion for summary judgment, asserts facts that are wholly unsupported by documentary evidence in an effort to demonstrate a genuine issue of material fact for trial").

that an employee of Plaintiff stopped Plaintiff from stabbing Cynthia's tires (Doc. #444, p. 12; Doc. #424-10, pp. 2–3).  After interviewing Cynthia, Defendant Ford went to the Kingsley farm—where Cynthia said the assault happened—to investigate her allegations (Doc. #444, p. 12; Doc. #424-10, p. 3).  At Defendant Ford's direction, another Lawrence County deputy at the scene interviewed the employee who Cynthia said had stopped Plaintiff from stabbing her tires (Doc. #444, p. 13; Doc. #424-10, p. 3).  That deputy reported to Defendant Ford that the employee claimed "the incident was a family matter" and  "that he did not want to get involved" and "asked [the deputy] to just leave it alone (Doc. #444, p. 13; Doc. #424-10, p. 3).  No one else claiming to be a witness to the events alleged by Cynthia came forward to Defendant Ford (Doc. #444, p. 13; Doc. #424-10, p. 4).  Defendant Ford then spoke to Plaintiff at the scene and found a pocket knife on Plaintiff's person generally matching Cynthia's description (Doc. #444, p. 14; Doc. #424-10, p. 4; Doc. #424-16, pp. 9–10).  After finding this knife, Defendant Ford believed he had sufficient probable cause to arrest Plaintiff (Doc. #444, p. 14; Doc. #424-10, p. 4).  Defendant Ford then placed Plaintiff under arrest.  (Doc. #444, p. 14; Doc. #424-10, p. 4).  Plaintiff made no statements to officers that he was innocent before or during his arrest.  (Doc. #444, p. 14; Doc. #424-10, p. 4; Doc. #424-16, p. 11).  These facts could lead a reasonable officer in Defendant Ford's position to believe there was probable cause to arrest Plaintiff.

Plaintiff's reliance on *Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999) does not change the outcome.  The *Kuehl* court held that the defendant police officer did not have probable cause to arrest the plaintiff for assault—and therefore was not entitled to qualified immunity on plaintiff's § 1983 false arrest claim—because the defendant "spoke to [the plaintiff] for only about twenty seconds," "refused to speak further with" the plaintiff  after she began to explain her version of the events, "omitted [the plaintiff's] version of events from his police report," refused to

interview the only eyewitness to the entire alleged assault despite the eyewitness's attempts to explain what had transpired, "made no mention of [the eyewitness's] account in the police report, and "ignored circumstances that would have explained *why* [the plaintiff] struck [the alleged assault victim] or that would have shown that [his] injuries occurred inadvertently when [the plaintiff] tried to push him away from her." *Id.* at 648–49, 51 (emphasis in original). The present case is distinguishable from *Kuehl*. Here, Defendant Ford never refused to speak with Plaintiff, who made no attempt to explain his version of events. Plaintiff points to no exculpatory evidence in the record that "minimal further investigation" would have uncovered. *See id.* at 650. Defendant Ford never refused to interview the only adult eyewitness he knew about: the employee who Cynthia said stopped Plaintiff from stabbing her tires. Defendant Ford did not omit any exonerating statements—there were none. Nor did he "ignore[] plainly exculpatory evidence." *See id.* at 651.

Additional Eighth Circuit case law supports this Court's finding that Defendant Ford had at least arguable probable cause to arrest Plaintiff. *See Anderson v. Cass Cty.*, 367 F.3d 741, 746–47 (8th Cir. 2004) (distinguishing *Kuehl* and holding there was probable cause to arrest plaintiffs for assault despite evidence that another person had tackled assault victim); *Amrine v. Brooks*, 522 F.3d 823 (8th Cir. 2008) (distinguishing *Kuehl* and holding that arguable probable cause existed to arrest plaintiff despite exculpatory statement by other officer, plaintiff's denial of involvement in crime, and inconsistent evidence regarding whether plaintiff was in room where crime occurred at time crime occurred); *Borgman*, 646 F.3d at 524 (holding that arresting officer's "subjective motivations in arresting [plaintiff] are irrelevant to the qualified immunity analysis"); *Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013) ("The law does not require law enforcement officers to conduct a perfect investigation to avoid suit."). Defendant Ford had at

least arguable probable cause to arrest Plaintiff. Defendant Ford is entitled to qualified immunity for the arrest and therefore to summary judgment on Count I.

### iii.   Failure to Investigate under § 1983 (Count III)

A government official's failure to investigate may violate the Due Process Clause of the Fourteenth Amendment. *Akins v. Epperly*, 588 F.3d 1178, 1183–84 (8th Cir. 2009) (citing *Wilson v. Lawrence County*, 260 F.3d 946, 955–57 (8th Cir. 2001)). A plaintiff establishes such a violation by showing "that each individual defendant 'intentionally or recklessly failed to investigate, thereby shocking the conscience,'" which is a question of law. *Moody*, 903 F.3d at 773 (quoting *Akins*, 260 F.3d at 1184). The shocks-the-conscience standard is a "rigorous" one: a "negligent failure to investigate inconsistencies or other leads" is not "conscience-shocking misconduct." *Id.* (citing *Akins*, 260 F.3d at 1184). The following three circumstances show intentional or reckless failure to investigate that shocks the conscience: "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, [and] (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Id. (*citing *Akins*, 260 F.3d at 1184); *Folkerts v. City of Waverly*, 707 F.3d 975, 981 (8th Cir. 2013).

Defendants argue that, while "Plaintiff may believe, in hindsight, the defendants could have, or should have done more," Plaintiff has failed to produce "evidence suggesting 'intentional' or 'reckless' conduct, as required" and that, "[a]s a result, the first prong of the qualified immunity analysis fails and summary judgment is proper." (Doc. #424, p. 34) (citing *Moody*, 903 F.3d at 773). Plaintiff argues that "the failure to investigate has been admitted to by [Defendants] Berry and DeLay," that "the evidence suggesting a conspiracy and the deliberate endeavor to frame Plaintiff strongly support a conclusion that the deliberate failure to investigate

was part of the plan," and that "[t]his isn't Lawrence County's 'first rodeo' regarding a deliberate/reckless failure to investigate." (Doc. #444, pp. 54–55).

Here, Plaintiff has not produced evidence showing an intentional or reckless failure to investigate that shocks the conscience. In addition to the facts regarding Defendant Ford's investigation on the day of the alleged assault, the material facts not in genuine dispute are that Defendant Berry was assigned to conduct a follow-up investigation of the alleged assault the day after the incident (Doc. #444, p. 17; Doc. #424-1, p. 4); Defendant Berry reviewed the reports prepared by Defendant Ford and the other investigating deputy; (Doc. #444, p. 18; Doc. #424-1, p. 4); Defendant Berry knew from the reports that the employee was the only adult witness Cynthia identified and that the only other identified witnesses were Cynthia's two minor children who were in her vehicle at the time of the incident (Doc. #444, p. 18; Doc. #424-1, p. 4); Defendant Berry filled out a referral form for Cynthia's two children to be interviewed at the Children's Center of Southwest Missouri (Doc. #444, p. 19; Doc. #424-1, p. 4; Doc. #424-4); that Cynthia's children were interviewed in Defendant Berry's presence (Doc. #444, p. 19; Doc. #424-1, p. 5); and Defendant Ford forwarded the videotaped interviews of Cynthia's children "to the Lawrence County Prosecutor's Office to be included with the other materials which had been gathered by Ford to be considered in determining whether to charge [Plaintiff] with a crime or crimes." (Doc. #444, p. 20; Doc. #424-1, p. 5). Plaintiff has not pointed to any part of the record that shows Defendants attempting to coerce or threaten Plaintiff, Defendants purposefully ignoring evidence suggesting Plaintiff's innocence, or systematic pressure to implicate Plaintiff in the face of contrary evidence. *See Moody*, 903 F.3d at 773.

The Eighth Circuit's decision in *Wilson v. Lawrence Cty.*, 260 F.3d 946 (8th Cir. 2001), which Plaintiff cites as analogous to his case, does not change the outcome. The *Wilson* court

held that the plaintiff—a murder suspect—established a reckless or intentional failure to investigate for summary judgment purposes by producing evidence that defendants coerced another suspect into implicating the plaintiff, coerced the plaintiff into confessing, and refused to investigate a third suspect or interview an eyewitness to the alleged crime. *Id.* at 957. The record in *Wilson* showed no "independent physical or circumstantial evidence linking [the plaintiff] to the crime, or corroborating his confession." *Id.* at 950 ("If [the plaintiff's] evidence proves credible at trial, a failure to investigate these other leads could easily be described as reckless or intentional.").

Here, in contrast, the record shows no coercion by any Defendant, no refusal to investigate another suspect to the assault, and no refusal to interview an eyewitness. The record shows no conscience-shocking conduct by Defendants. *See Folkerts*, 707 F.3d at 981–82 (holding that investigating officer's reliance on a patrol officer's report did not shock the conscience despite investigating officer's failure to independently interview alleged sexual assault victim and mentally-retarded alleged perpetrator's case worker and apartment manager). Plaintiff fails the first prong of qualified immunity because he has failed to establish a due process violation. Defendants DeLay, Berry, and Ford are entitled to qualified immunity and summary judgment on Count III.

### iv. Civil Rights Conspiracy under § 1983 (Count II)

To succeed on a § 1983 conspiracy claim, the plaintiff must prove "(1) that the defendants conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured him." *Holmes v. Slay*, 895 F.3d 993, 1001 (8th Cir. 2018) (citing *Bonenberger v. St. Louis Metro. Police Dep't*, 810 F.3d 1103, 1109 (8th Cir. 2016)). To satisfy

the first element, the "plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Id.* (internal quotation marks omitted) (quoting *Bonenberger*, 810 F.3d at 1109). The plaintiff can do so "by pointing to at least some facts that would suggest the defendants reached an understanding to violate his rights." *Id.* Regarding the third element, the plaintiff must prove an actual deprivation of a constitutional right in addition to proving the conspiracy to bring about that deprivation. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999).

Defendants argue that even in this "unusual" case where there is audio evidence of the February 2013 meeting constituting the alleged conspiracy, Plaintiff has shown no evidence "which would suggest that defendants 'reached an understanding' to violate his rights." (Doc. #424, p. 32) (citing *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989)). Plaintiff argues that "[t]he facts and circumstances establish at least a material factual controversy over the issue of whether [Defendants] had a meeting of the minds and agreed to a conspiracy to deprive Plaintiff of his Constitutional rights" because Defendants "expressed similar goals—to 'get Kiman.'" and thus "the facts and circumstances raise a reasonable inference of a conspiracy which involves a deliberate scheme (and certainly the motive) to 'frame' Plaintiff and falsely arrest and convict him of serious crimes." (Doc. #444, p. 53) (citing Doc. #424-3, p. 12).

Assuming, without deciding, that Plaintiff had created a triable fact issue as to whether Defendants had a meeting of the minds, Plaintiff fails the third element of his conspiracy claim. Plaintiff does not allege a violation of any right other than those asserted in his Fourth and Fourteenth Amendment claims, and individual Defendants are entitled to qualified immunity on those claims. Because Plaintiff has failed to demonstrate that the alleged conspiracy caused his federal rights to be violated, *see Askew*, 191 F.3d at 957, Plaintiff has failed to satisfy the first

qualified immunity prong.  Defendants are therefore entitled to qualified immunity and to summary judgment on Count II.

### v.  Municipal Liability under § 1983 (Count IV)

A municipality is directly liable under § 1983 when an act done pursuant to its official policy or custom violates a person's federal rights.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).  In particular, a municipality may face direct liability under § 1983 for its "failure to train its employees in a relevant respect" if such failure amounts to a policy or custom of "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Defendants argue that Defendant Lawrence cannot be directly liable because Plaintiff has shown no constitutional violation at the hands of the LCSO Defendants and that, alternatively, "there is no evidence to support a claim that plaintiff's injuries were the result of an unconstitutional policy, an unconstitutional custom, or a deliberately indifferent failure to train." (Doc. #424, p. 35) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)).  Plaintiff argues he has established a genuine dispute of material fact as to whether an official policy of Defendant Lawrence County caused his alleged injury because "one need look no farther than the participation by the final policy making authority, Sheriff DeLay participating in and ratifying deliberate conspiratorial misconduct designed to damage Plaintiff" and because "[f]acts developed in discovery and set forth above reflect not only DeLay's involvement and approval of the scheme to 'get Kiman' but also reflect importantly on his lack of credibility."  (Doc. #444, p. 58)  Plaintiff also argues he has established a genuine dispute of material fact as to whether his alleged injury was caused by

Defendant Lawrence County's deliberately indifferent failure to train or supervise its sheriff and deputies "in the performance of their duties." (Doc. #444, pp. 58–59).

Even if Plaintiff were to establish that Defendant Lawrence County had an official policy or custom of illegal warrantless arrests or conscience-shocking failures to investigate, Defendant Lawrence County is entitled to summary judgment because Plaintiff has not established a violation of his constitutional rights. This Court has granted summary judgment in favor of Defendants on Plaintiff's Fourth Amendment wrongful arrest claim, his Fourteenth Amendment failure to investigate claim, and his civil rights conspiracy claim. Plaintiff has not alleged that any other right of his has been violated. Defendant Lawrence County is therefore entitled to summary judgment on Count IV. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *Heller*, 475 U.S. at 799 ("To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated her federal right.").

## B. Plaintiff's Common Law Claims

### i. Sovereign Immunity

Insofar as Plaintiff asserts his common law claims against LCSO Defendants in their official capacities and against Defendant Lawrence County directly, Defendants argue that they are entitled to summary judgment under the doctrine of sovereign immunity. Under Missouri law, "[s]uch sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect . . . ." Mo. Rev. Stat § 537.600.1. *See also Benson v. Kansas City, Bd. of Police Comm'rs*, 366 S.W.3d 120, 124 (Mo. Ct. App. 2012) (citing *Davis v. Lambert–St. Louis Int'l Airport,* 193 S.W.3d 760, 764 (Mo. banc 2006); Mo. Rev. Stat. § 537.600.1) ("Government entities are protected from tort liability by sovereign

immunity."). "[T]he doctrine of sovereign immunity applies equally" to claims against a government entity and those against government officials sued in their official capacities. *R.C. v. Southwestern Bell Tel. Co.*, 759 S.W.2d 617, 620 (Mo. Ct. App. 1988) (citing *Best v. Schoemehl*, 652 S.W.2d 740, 742 (Mo. Ct. App 1983)). A plaintiff must establish the elements of a sovereign immunity waiver[3] "as part of its own case, because sovereign immunity is not an affirmative defense." *Maune ex rel. Maune v. City of Rolla*, 203 S.W.3d 802, 804 (Mo. Ct. App. 2006) (citing *Burke v. City of St. Louis*, 349 S.W.2d 930, 931 (Mo. 1961)) (affirming grant of summary judgment in favor of City on sovereign immunity grounds because "[i]t was Plaintiff's burden to establish a sovereign immunity waiver as part and parcel of any pleaded theory against the City" and "Plaintiff could not rest on the mere allegations of his pleadings when faced with the City's summary judgment motion").

Defendants argue that Plaintiff has not carried his burden of proving that either the "negligent driving" exception or the "dangerous condition" exception to Missouri's state sovereign immunity statute applies in this case because "the complaint does not allege plaintiff's injuries were the result of the negligent operation of a motor vehicle or the dangerous condition of its property," (Doc. #424, pp. 43–44) (citing Mo. Rev. Stat § 537.600.1 and cases), and that even if Plaintiff had so pleaded, sovereign immunity would not be waived because Defendant Lawrence County's insurance coverage expressly "preserves the County's sovereign immunity" and "[t]his type of language has previously been found sufficient to preserve an entity's

---

[3]Under Missouri law, "[a] municipality has sovereign immunity from actions at common law tort in all but four cases: (1) where a plaintiff's injury arises form a public employee's negligent operation of a motor vehicle in the course of his employment; (2) where the injury is caused by the dangerous condition of the municipality's property; (3) where the injury is caused by the municipality performing a proprietary function as opposed to a governmental function; and (4) to the extent the municipality has procured insurance, thereby waiving sovereign immunity up to but not beyond the policy limit and only for acts covered by the policy." *Div. of Emp't Sec. v. Bd. of Police Comm'rs*, 864 F.3d 974, 980 n.4 (8th Cir. 2017) (quoting *Phelps v. City of Kansas City*, 371 S.W.3d 909, 912 (Mo. Ct. App. 2012)); Mo. Rev. Stat. §§ 537.600.1(1)–(2), 537.610.1.

sovereign immunity." (Doc. #424, p. 45) (citing cases). Plaintiff did not respond to Defendants' sovereign immunity argument.

Here, Defendants are entitled to summary judgment on Plaintiff's common law claims against LCSO Defendants in their official capacities and against Defendant Lawrence County. First, Plaintiff's Third Amended Complaint does not plead that sovereign immunity has been waived on Count V or VI. Plaintiff does not allege injuries resulting from negligent operation of a motor vehicle or from the dangerous condition of government property. Nor does Plaintiff allege the performance of any proprietary function or any tort claim insurance policy that may have acted as a sovereign immunity waiver. Second, Plaintiff's silence in the face of Defendants' sovereign immunity arguments does not satisfy his burden of showing that sovereign immunity has been waived on any of his common law claims. Plaintiff effectively "rest[s] on the mere allegations of his pleadings," which would not be enough to show a sovereign immunity waiver at summary judgment even if Plaintiff had alleged such a waiver in his Third Amended Complaint. *See Maune ex rel. Maune*, 203 S.W.3d at 804; *Satcher v. Univ. of Ark. Pine Bluff Bd. of Trustees*, 558 F.3d 731, 734–35 (8th Cir. 2009) (holding that "[i]t was [the plaintiff's] responsibility to show that there were genuine issues of material fact in the record that precluded summary judgment" and that "[i]t was not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact").

Defendants are entitled to sovereign immunity—and therefore to judgment as a matter of law—to the extent Plaintiff brings Counts V and VI against LCSO Defendants in their official capacities and against Defendant Lawrence County directly. Summary judgment is thus proper to this extent. For the remainder of section III.B., the Court focuses on Plaintiff's common law claims against Defendants DeLay, Berry, and Ford in their individual capacities.

### ii. Common Law False Arrest (Count V)

Under Missouri law, "[t]he essence of the cause of action of false arrest, or false imprisonment, is the confinement, without legal justification, by the wrongdoer of the person wronged." *Wright v. United States*, 892 F.3d 963, 967 (8th Cir. 2018) (quoting *Rustici v. Weidemeyer*, 673 S.w.2d 762, 767 (Mo. banc 1984)) (holding that legal justification "is a complete defense to" a cause of action for false arrest). An arrest supported by probable cause "is justified *per se* under Missouri law and therefore cannot form the basis of a false-arrest claim." *Zike v. Advance Am., Cash Advance Ctrs. Of Missouri, Inc.*, 646 F.3d 504, 512 (8th Cir. 2011) (citing *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 820 (8th Cir. 2010)). Also, "Missouri has long-applied the doctrine of official immunity." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008) (citing *Reed v. Conway*, 20 Mo. 22 (1854)). Official immunity "protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts." *Id.* (citing *Davis v. Lambert-St. Louis Int'l Airport*, 685 S.W.3d 760, 763 (Mo. banc 2005)). Official immunity "does not apply to discretionary acts done in bad faith or with malice." *Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005) (citing *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986)). Deciding whether to arrest a person is a discretionary act because "the officer must decide what course should be pursued based on the circumstances at hand." *Id.* ("Because arresting someone is a discretionary act, the issue here is whether [the defendant officer] acted in bad faith or with malice, removing the protection of official immunity.").

Defendants argue Plaintiff has no viable false arrest claim against Defendants DeLay or

Berry "because neither was involved in Kiman's arrest, nor is there any evidence they directed or suggested to Ford that it happen" and that Defendant Ford is entitled to summary judgment under the defense of justification because he had probable cause to arrest Kiman and, in the alternative, under the doctrine of official immunity because "the uncontroverted facts establish [Defendant] Ford, the only one who arrested Kiman, did not act in 'bad faith or with malice.'" (Doc. #424, pp. 38–40) (citing *State ex rel. Twiehaus*, 706 S.W.2d at 446; *Wright*, 892 F.3d at 967). Plaintiff argues that summary judgment is improper because "DeLay, Berry, Ford and likely others were engaged in an ongoing scheme to 'get Kiman'" and "[a]ll who participated in that scheme/conspiracy would have been 'instigators' of the false arrest." (Doc. #444, p. 60).

Here, LCSO Defendants are entitled to summary judgment insofar as Plaintiff brings Count V against them in their individual capacities. Even if a finding of arguable probable cause for qualified immunity purposes were insufficient to show that Plaintiff's arrest was justified under Missouri law, LCSO Defendants are entitled to official immunity. As established in the above discussion of Plaintiff's arrest, there is no genuine dispute of material fact as to whether LCSO Defendants acted in bad faith or with malice in arresting Plaintiff. *See White v. Jackson*, 865 F.3d 1064, 1074–75 (8th Cir. 2017) (quoting *State ex rel. Twiehaus*, 706 S.W.2d at 447) (holding that under Missouri law "[b]ad faith 'ordinarily contains a requirement of actual intent to cause injury'"); *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (quoting *State ex rel. Twiehaus*, 706 S.W.2d at 447) (holding that under Missouri law "[a] finding of malice requires 'conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer form such conduct bad faith or any improper or wrongful motive'"). As a result, Missouri's official immunity doctrine shields LCSO Defendants from liability. They are

accordingly entitled to judgment as a matter of law.  Summary judgment is appropriate on Count V.

### iii.  Common Law Malicious Prosecution (Count VI)

A plaintiff bringing a malicious prosecution claim under Missouri law must "prove: '1) commencement of an earlier suit against plaintiff; 2) instigation of the suit by defendant; 3) termination of the suit in plaintiff's favor; 4) lack of probable cause for the suit; 5) malice by defendant in instituting the suit; and 6) damage to plaintiff resulting from the suit.'" *Zike v. Advance Am., Cash Advance Ctrs. of Missouri, Inc.*, 646 F.3d 504, 509 (8th Cir. 2011) (quoting *State ex rel. Police Ret. Sys. of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. banc 1994)). Because it is Missouri public policy to "encourage[] citizen involvement and cooperation in the reporting and prosecution of crime," courts "require strict proof of each element" of a Missouri common law malicious prosecution claim.  *Cassady v. Dillard Dep't Stores*, 167 F.3d 1215, 1219 (8th Cir. 1999) (internal quotation marks omitted) (citing *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 806 (Mo. banc 1984); *Burnett v. Griffith*, 769 S.W.2d 780, 783 (Mo. banc 1989)). Regarding the fourth element, "[t]he test of probable cause is whether the facts and circumstances would warrant a belief in an ordinarily cautious person that another had committed a crime."  *Dodson v. MFA Ins. Co.*, 509 S.W.2d 461, 467 (Mo. 1974) (citing *Kvasnicka v. Montgomery Ward & Co.*, 166 S.W.2d 503, 513 (Mo. 1942)).  The following circumstances "constitute prima facie evidence of a malicious-prosecution defendant's probable cause and consequently trigger a rebuttable presumption that a defendant had probable cause to initiate the underlying criminal proceedings":

> (1) the original charging instrument is a grand jury's indictment; (2) the original charging instrument is a prosecuting attorney's sworn complaint or information, based on his own information and belief; or (3) an examining

magistrate's finding of probable cause at a preliminary hearing, and subsequent 'binding over' of the defendant for trial.

*Zike*, 646 F.3d at 510 (internal footnote omitted) (citing *Moad v. Pioneer Fin. Co.*, 496 S.W.2d 794, 798–99 (Mo. 1973); *Huffstutler v. Coates*, 335 S.W.2d 70, 75 (Mo.1960); *Randol v. Kline's, Inc.*, 49 S.W.2d 112, 114 (Mo. 1932)).

Defendants argue that summary judgment is proper for "multiple independent reasons," including that Plaintiff cannot satisfy the "instigation," "termination-in-plaintiff's-favor," "lack of probable cause," and "malice" elements of a malicious prosecution claim under Missouri law. (Doc. #424, pp. 41–43). Plaintiff argues that "he has at least created a material controversy of fact as to this claim" because "[t]here were charges filed, there was no probable cause and there was malice, as exhibited by Berry's expressed intention that he was 'steady working' to 'get' Kiman." (Doc. #424, p. 61) (citing Doc. #424-3, pp. 5, 12).

Here, LSCO Defendants are entitled to summary judgment on Count VI insofar as Plaintiff brings it against them in their individual capacities. Even if Plaintiff had created a genuine dispute of material fact as to whether LSCO Defendants instigated his criminal proceedings, Plaintiff has not rebutted Defendants' prima facie showing that there was probable cause for those proceedings. Plaintiff does not genuinely dispute[4] that on September 18, 2015, Special Prosecutor Sullivan filed a sworn criminal complaint against Plaintiff on his own information and belief (Doc. #444, p. 22; Doc. #424-17, p. 1); that after Cynthia testified and was cross-examined at Plaintiff's March 3, 2016 preliminary hearing, Plaintiff's attorney conceded there was probable cause (Doc. #444, p. 24; Doc. #424-15, p. 15); and that at the conclusion of Plaintiff's preliminary hearing the judge bound Plaintiff over for trial. (Doc. #444,

---

[4] "[W]here the facts of a malicious prosecution claim are undisputed," the question of whether defendants "possessed probable cause 'is a question of law for the court, not a question of fact for the jury.'" *Zike*, 646 F.3d at 510 (quoting *State ex rel. Police Ret. Sys. of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. banc 1994)).

p. 25; Doc. #424-16, p. 15). These facts provide two independent triggers of a rebuttable presumption that there was probable cause to initiate the proceedings: the "original charging instrument" is Special Prosecutor Sullivan's sworn criminal complaint based on his information and belief, and "an examining magistrate[]" found probable cause at a preliminary hearing where Plaintiff was subsequently bound over for trial. *See Zink*, 646 F.3d at 510. Plaintiff points to nothing in the record to rebut the presumption of probable cause to initiate criminal proceedings. Accordingly, Defendants are entitled to summary judgment on Count VI.

## IV.    Conclusion

Accordingly, Defendants DeLay, Berry, Ford and Lawrence County's Motion for Summary Judgement (Doc. #423) is granted.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

DATE: <u>February 25, 2019</u>